JOHN E. CAMPBELL, administrator, *vs.* JACOB ASHLER.

Worcester. September 23, 1946. — December 2, 1946.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Negligence,* Motor vehicle, Contributory. *Evidence,* Of speed, Presumptions and burden of proof. *Res Judicata. Executor and Administrator,* Claim for death. *Death Statute. Practice, Civil,* Parties, Discretionary control of evidence, Jury room. *Witness,* Cross-examination. *Jury and Jurors.*

Testimony by an occupant of an automobile, that as it was entering a street he looked down the street and saw another automobile approaching about five car lengths away at fifty or sixty miles an hour, was not incompetent on the ground that the witness did not have a sufficient opportunity to judge the speed of the other automobile.

Evidence of the circumstances in which an automobile of the defendant, travelling at high speed close to his right side of a highway on a misty day, collided with another automobile slowly entering that side of the highway from a filling station warranted a finding of the defendant's negligence and did not require a finding that the operator of the other automobile was guilty of contributory negligence.

A ruling that an action for death under G. L. (Ter. Ed.) c. 229, § 5, as amended, is barred by contributory negligence on the part of the decedent cannot properly be made unless a conclusion of such negligence is the only correct conclusion from indisputable facts or evidence binding the plaintiff.

An administrator, as defendant representing his intestate's estate generally in an action for injury sustained in a collision between an automobile operated by the plaintiff and an automobile operated by the intestate, was so far a different person from himself as plaintiff-administrator in an action under G. L. (Ter. Ed.) c. 229, § 5, as amended, against the other operator for the death of his intestate resulting from the same collision, that a judgment for the other operator as plaintiff did not, on the ground of res judicata, bar the action for death.

In an action for the death of the operator of an automobile arising from a collision, the purpose of the decedent's journey, as testified to by a witness, was not so vital to the case as to make it error for the trial judge to exclude cross-examination of the witness respecting that subject.

No error appeared in allowing a jury, after hearing the evidence in an action arising from a collision of automobiles, to take with them to the jury room toy automobiles which had been used "for demonstration purposes" during the trial.

Tort. Writ in the Central District Court of Worcester dated January 6, 1942.

Upon removal to the Superior Court, the action was tried before *Beaudreau, J.*

*Nunziato Fusaro*, for the plaintiff.

*C. W. Proctor*, for the defendant.

Qua, J. The plaintiff prosecutes this action as administrator of the estate of Francis T. Campbell to recover for the death of his intestate alleged to have been caused by negligence of the defendant. G. L. (Ter. Ed.) c. 229, § 5, as amended by St. 1937, c. 406, § 3. See now St. 1946, c. 614, § 1, to take effect January 1, 1947. After a verdict for the plaintiff the judge entered a verdict for the defendant upon leave reserved. Both parties are here on exceptions.

The plaintiff's intestate was instantly killed by the collision of an automobile driven by him and an automobile driven by the defendant on a macadam paved highway in Oxford at about 5:45 A.M. on August 1, 1941. The pavement was from thirty-two to thirty-three feet in width, and there was on each side a shoulder varying from six to nine feet in width. The road was straight for a distance of eight or nine hundred feet south of the point of collision. The defendant was travelling north close to his right hand side of the pavement. Beyond the facts just stated there was little agreement. The witnesses gave widely divergent narratives as to what occurred.

From the evidence more favorable to the plaintiff the jury could have found that the deceased had been travelling south; that he crossed to the east side of the road and entered the premises of a gasoline station; that finding no one in attendance, he started out again, "rolling out slowly" at from five to ten miles an hour and looking toward the road; and that his course was in a general southerly direction at an acute angle to the road as he approached it. A woman companion in the automobile with him testified that he was looking toward the south, the direction from which the defendant was approaching; that it was then possible to see in that direction four or five times the length of the court room; and that at that time "there was nothing

coming." This last statement referred only to the observation of the witness within her range of vision and was competent in spite of objection. This witness further testified that the deceased then started to turn his head to the right, and "the automobile turned with him." His purpose, as might be found, was to cross the road to his right hand side. The woman companion, after observing nothing coming from the left or south, looked to the right "at least two seconds," "brought her head back again," and saw the defendant's automobile coming from the left about five car lengths away at fifty or sixty miles an hour "right near . . . [its] right hand edge of the road." We cannot say that the witness did not have a sufficient opportunity to judge the defendant's speed to enable the jury to consider her estimate. *Logan* v. *Goward*, 313 Mass. 48, 51. This witness testified that at that time the front wheels of the automobile of the deceased were "just at the macadam." There was a crash which, from the condition of the automobiles after the accident, the jury could find was of great violence. The defendant gave no signal. At the time of the accident "it was light," but "it had not been light very long." It had been raining and it was "misting" at the time. The roads were wet. There was evidence that there were woods on both sides of the road "not too heavily wooded," and that one coming from the gasoline station could see the road for "an appreciable distance." After the collision the automobiles were locked together practically head on and on the easterly edge of the macadam, except that the left rear wheel of the deceased's automobile was on the shoulder and not on the macadam. The defendant's automobile was turned slightly to its right toward the gasoline station.

There was evidence of admissions by the defendant that he did not see the automobile of the deceased at any time previous to the collision. There was also evidence that he saw it at least one thousand feet away, and that it did not come out of the gasoline station at all, but came to its left across the highway and hit the defendant's automobile.

The judge should not have entered a verdict for the defendant.

1. There was evidence of causal negligence on the part of the defendant. The jury could have found that the deceased was coming out from the gasoline station; that the collision occurred at the extreme edge of a broad road; that the defendant was proceeding at a high rate of speed on a wet, misty morning; that he did not see the automobile of the deceased until the collision occurred; and that if he had been driving more slowly or more alertly he would have seen the front end of it as it slowly approached the macadam in time to avoid it by slowing down or veering slightly to his left, where he had at his disposal almost the whole of the road. See *Carbonneau* v. *Cavanaugh*, 290 Mass. 139, 141; *Perricotti* v. *Andelman*, 298 Mass. 461; *Avery* v. *R. E. Guerin Trucking Co. Inc.* 304 Mass. 500, 505; *Marturano* v. *Eastern Massachusetts Street Railway*, 306 Mass. 231, 234; *Nash* v. *Heald*, 306 Mass. 518; *Baczek* v. *Damian*, 307 Mass. 167; *Morton* v. *Dobson*, 307 Mass. 394, 398; *Gaines* v. *Ratnowsky*, 311 Mass. 254. Compare *Edwards* v. *Warwick*, 317 Mass. 573.

2. The judge could not properly enter the verdict for the defendant on the ground of contributory negligence of the deceased. By G. L. (Ter. Ed.) c. 231, § 85, the person killed was "presumed to have been in the exercise of due care, and contributory negligence on his part . . . [was] an affirmative defence to be . . . proved by the defendant." In actions for death there is commonly no witness by whose testimony as to the circumstances of the accident the administrator is bound. See *Fulton* v. *Edison Electric Illuminating Co. of Boston*, 303 Mass. 258, 263–264; *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205, 206–207. In such cases, therefore, the effect of the statute is usually to prevent the direction of a verdict for the defendant on the ground of contributory negligence of the deceased, if it is reasonably possible that the death could have been caused by negligence of the defendant, as alleged, without contributory negligence of the deceased. *Mercier* v. *Union Street Railway*, 230 Mass. 397, 403–404. *Conroy* v. *Maxwell*, 248 Mass. 92, 96.

*Lekarczyk* v. *Dupre*, 265 Mass. 33, 38. *King* v. *Weitzman*, 267 Mass. 447, 449–450. *Mulroy* v. *Marinakis*, 271 Mass. 421, 423–424. *Griffin* v. *Feeney*, 279 Mass. 602, 605–606. *Brown* v. *Henderson*, 285 Mass. 192, 195. *Conrad* v. *Mazman*, 287 Mass. 229, 234. *McCarthy* v. *Great Atlantic & Pacific Tea Co.* 292 Mass. 526. *Birch* v. *Strout*, 303 Mass. 28, 30, 31. *Duff* v. *Webster*, 315 Mass. 102. There is no evidence by which the plaintiff is bound that the deceased did not look carefully to his left as he came toward the highway. *Pond* v. *Somes*, 302 Mass. 587, 590–591. Because of the woods and mist he may have been unable to see the defendant's automobile until his own automobile had proceeded far enough into the road to bring the driver's seat beyond the line of the trees, when, owing to the defendant's speed, the deceased may not have had time to avoid the collision. Or if the deceased saw the defendant's automobile at a distance, he may have been deceived as to its speed and may reasonably have thought that he had time to pass. He may reasonably have expected that the defendant would see him and would slow down, or that the defendant would swerve slightly to his left and leave the deceased in a safe position. See *Palomebella* v. *Foss*, 277 Mass. 143; *Walsh* v. *Wilson*, 281 Mass. 78. Negligence of the deceased is not a necessary conclusion from any indisputably established facts. This case is distinguishable from *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392, where all the plaintiffs were alive, and where it was held that the testimony of each plaintiff by which he was bound demonstrated his contributory negligence. *Stickel* v. *Cassasa*, 268 Mass. 59. The case also differs from cases where the deceased approached the crossing of a railroad upon which he must expect trains to be run at high speed, although they cannot quickly slow down and cannot change direction at all. See *Rice* v. *Boston & Maine Railroad*, 316 Mass. 603; *Papageorge* v. *Boston & Maine Railroad*, 317 Mass. 235. Compare *Rivet* v. *Boston & Maine Railroad*, *ante*, 41.

3. We cannot accept the defendant's contention that a judgment in his favor against the plaintiff as administrator rendered by the District Court of the United States for

damages sustained by the defendant in the same collision is res judicata in this action. This contention rests upon Rule 13 (a) of the new Federal Rules of Civil Procedure, which reads as follows: "(a) Compulsory counterclaims. A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." See also Rule 13 (h) and Rule 82. The defendant argues that Rule 13 (a) required the present plaintiff to bring his cause of action to the Federal court in the form of a counter claim in the former action, and that he lost his cause of action altogether when he failed to do so.

We do not pause to discuss the general question of the power of Federal courts by rules for the regulation of their own practice to preclude a party sued in a Federal court from resorting to a State court to establish his own claim. See *Red Top Trucking Corp.* v. *Seaboard Freight Lines, Inc.* 35 Fed. Sup. 740. Compare *Liberty Mutual Ins. Co.* v. *Hathaway Baking Co.* 306 Mass. 428, 433–435. In the present case at least there is no res judicata because the parties in the Federal court were not the same as the parties in the present action. In the Federal court the administrator was necessarily sued in his capacity as the representative of the estate of the deceased for the benefit of creditors and distributees. But it is settled that in bringing an action like the present one, based upon the death statute of this Commonwealth, for the benefit of the persons designated in the statute, the administrator acts in a different capacity and in the law of res judicata is not the same person as he is when he represents the estate in general. *McCarthy* v. *William H. Wood Lumber Co.* 219 Mass. 566. *Eaton* v. *Walker,* 244 Mass. 23, 31. *Beauvais* v. *Springfield Institution for Savings,* 303 Mass. 136, 147. *Chambers* v. *Cameron,* 29 Fed. Sup. 742, 744. The decision in *Biggio* v. *Magee,* 272 Mass. 185, does not apply. We cannot give to the Federal rule the

effect of depriving of his cause of action a person who was never a party to litigation in that court.

4. The plaintiff called as a witness a brother of the deceased who was a police officer of Worcester, and who testified to a conversation with the deceased the day before the accident in which the deceased said he was going to Rye, New York, to get married, leaving early the following day. On cross-examination the defendant's counsel offered to show that the witness and two other police officers of Worcester who had testified for the plaintiff at the trial of this case were not called as witnesses at the trial in the Federal court, and stated that he wanted to ask the witness on the stand whether or not he had told his father, who was the administrator and the plaintiff in this case, "about such conversation." The evidence was excluded. The extent to which a party may go in impeaching the testimony of witnesses called by his opponent on matters not vital to the case, as well as the limits of cross-examination in general, are within the control of the trial judge. *Commonwealth* v. *Schaffner*, 146 Mass. 512, 515. *Commonwealth* v. *McDermott*, 255 Mass. 575, 580. *Kenyon* v. *Hathaway*, 274 Mass. 47, 49. *Guiffre* v. *Carapezza*, 298 Mass. 458, 460. *Commonwealth* v. *Beal*, 314 Mass. 210, 229. Compare *Gossman* v. *Rosenberg*, 237 Mass. 122. The fact that the two other officers had not testified in the Federal court had already appeared from their own testimony, and the conversation between the witness then on the stand and the deceased as to the intention of the deceased to marry the next day was not sufficiently vital to the case to render the exclusion of cross-examination about it error.

5. There was no error in allowing the jury to take to the jury room toy automobiles that had been used "for demonstration purposes" at the trial.

The defendant's exceptions are overruled. The plaintiff's exceptions are sustained. The verdict entered by the judge on leave reserved is set aside. The verdict returned by the jury is to stand, and judgment is to be entered for the plaintiff on that verdict.

*So ordered.*